IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHEESE DEPOT, INC., | ) | |
|     Plaintiff, | ) | Case No. 14 C 1727 |
| | ) | |
|     v. | ) | Judge Joan B. Gottschall |
| | ) | |
| SIROB IMPORTS, INC., | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cheese Depot and defendant Sirob Imports manufacture and distribute cheese. In this diversity action, Cheese Depot contends that Sirob is liable for money damages based on Sirob's alleged breach of a contract about the sale of cheese and property in Romania. Sirob's motion to dismiss for improper venue and failure to state a claim pursuant to Fed. R. 12(b)(3) and 12(b)(6), respectively, is before the court. For the following reasons, Sirob's motion is denied in its entirety.

**I. BACKGROUND**

The following facts are drawn from the complaint and are accepted as true for the purpose of the motion to dismiss. Cheese Depot is an Illinois citizen and Sirob Imports is a New York citizen. In July 2007, Cheese Depot entered into an agreement with Sirob relating to the sale of a building, along with certain equipment and inventory. The parties' agreement (the "Chicago agreement") is attached as Exhibit A to the complaint and provides, in full, as follows:

> This agreement, made in Chicago, Illinois, July 24, 2007[,] is between Nick Boboris and John Livadatis. In this agreement Nick Boboris, President, DBA Sirob Imports, 21 Gear Avenue, Lindenhurst, NY 11757[,] is referred to as NB. John Livaditis, Director, DBA Lacto Baneasa, Cheese Factory, 16 E. Old Willow

Road, Prospect Heights, IL, 60070, who has the power to enter into contracts on behalf of Cheese Factory, [is] referred to as JL.[1]

JL agrees to sell to NB 75% of the Lacto Baneasa building and equipment for $810,000.00 with a $10,000.00 down payment on signing of the contract. The balance is to be paid within 8 years with 7% interest. Interest only payment will start on January 1, 2008. The principal balance will be reduced by $30,000.00 annually by December 31st each with the balance due on September 1, 2015[,] or sooner.

INVENTORY:
NB will buy the inventory of the 2007 season; estimated amount is 85,000 kg of Feta and 5,000 kg of Hard Cheese. After he checks the quality at the factory, he will make a commitment to buy it or not to buy. Also all the new plastic containers ordered for the season 2008 will pay cost. The price of the Feta will be $3.85 per kg. plus shipping costs. The price of the Hard Cheese will be $4.85 per kg. plus shipping costs. The terms for the inventory will be 120 days, paying weekly, as he collects money for sales.

| SIROB IMPORTS, INC. | CHEESE FACTORY |
|---|---|
| Accepted by: | Accepted by: |
| /s/ | /s/ |
| Nick Boboris, President | John Livaditis |

(Dkt. 1 at Ex. A.)

Cheese Depot alleges that it transferred the building and equipment and delivered the feta cheese, containers, and hard cheese to Sirob. According to Cheese Depot, Sirob made payments as promised but then stopped. In its single-count breach of contract complaint based on the Chicago agreement, Cheese Deport asserts that Sirob has refused to pay the outstanding amount of $269,942.72 that it owes.

---

[1] The parties have not commented on the Chicago agreement's reference to the "Cheese Factory" as opposed to the "Cheese Depot." For the purposes of the motion to dismiss, the court assumes that both names refer to the same entity. The plaintiff should ensure that it is correctly identified in its complaint.

In its motion to dismiss, Sirob asserts that after the parties signed the Chicago agreement, Nick Boboris (Sirob's President) and John Livaditis (Cheese Depot's owner) executed a contract governing the sale of the Lacto Baneasa building, which is located in Romania (the "Romanian agreement," which is attached to Sirob's memorandum in support of its motion to dismiss). (Dkt. 14-3.)[2] The Romanian agreement governs the transfer of shares owned by Livaditis to Boboris due to Livaditis' retirement.

Sirob argues that Cheese Depot's complaint fails to state a claim because the Chicago agreement merely reflects the parties' intention to enter in a contract about property in Romania. According to Sirob, the Chicago agreement's language about the intended purchase of real property was superceded by the Romanian agreement, which purportedly contains provisions about the sale of the property (even though the plain language of the Romanian agreement does not appear to correspond to this assertion). Thus, Sirob reasons that Cheese Depot cannot recover damages under the Chicago agreement based on Sirob's alleged failure to make all required payments for the property in Romania. In addition, based on its position that the Romanian agreement is the operative contract, Sirob contends that Boboris – who signed the Romanian agreement – is the proper defendant. Thus, Sirob asserts that venue in this district is improper because the events relating to the Romanian agreement took place in Romania, Boboris is a New York citizen, and Illinois has no connection to the Romanian agreement.

---

[2] This is Sirob's characterization of the Romanian agreement; the court makes no finding that purchasing property in Romania was, in fact, the subject of the Romanian agreement.

## II. DISCUSSION

Sirob's position about venue is intertwined with its position on the merits. The court thus begins with Cheese Depot's Rule 12(b)(6) motion for failure to state a claim for which relief may be granted and then considers the parties' arguments about venue.

### A.  Rule 12(b)(6) Motion to Dismiss For Failure to State a Claim

#### 1.  Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

#### 2.  Sirob's Claim that Cheese Depot Sued Based on the Wrong Contract

"A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 746 n.1 (7th Cir. 2012). "A plaintiff, however, has much more flexibility in opposing a Rule 12(b)(6) motion." *Id*. A plaintiff opposing a Rule 12(b)(6) motion to dismiss may elaborate on

its factual allegations if the newly-provided detail is consistent with the complaint or may "submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" (although in this instance, "[i]t may also be prudent to explain to the district court that the materials are being submitted for illustrative purposes and should not be used to convert the motion into a Rule 56 motion for summary judgment.)." *Id*.

Cheese Depot acknowledges the existence of the Romanian agreement but contends that it does not affect the enforceability of the provisions in the Chicago agreement about the sale of the Romanian property. As noted above, the Chicago agreement provides that:

> [Livaditis] agrees to sell to [Boboris] 75% of the Lacto Baneasa building and equipment for $810,000.00 with a $10,000.00 down payment on signing of the contract. The balance is to be paid within 8 years with 7% interest. Interest only payment will start on January 1, 2008. The principal balance will be reduced by $30,000.00 annually by December 31st each with the balance due on September 1, 2015[,] or sooner.

(Dkt. 1 at 4.) The parties agree that the phrase "on signing of the contract" refers to the signing of the Romanian agreement.

To determine if a document reflecting the parties' intent to take an action in the future is enforceable, courts evaluate whether the record shows that the parties intended to be bound. *Quake Const., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 996-997 (Ill. 1990). If a document "specifically contemplates a later agreement as a condition precedent to a binding contract," it is unenforceable as a contract. *JamSports and Enttm't LLC v. Paradama Prod., Inc.*, 336 F. Supp. 2d 824, 846 (N.D. Ill. 2004) (citing *Quake*, 565 N.E.2d at 993).

Sirob contends that the Chicago agreement specifically refers to the anticipated signing of a separate contract so the Chicago agreement is not an enforceable contract. In contrast, Cheese

Depot argues that the parties included the reference to the Romanian agreement to clarify when Sirob's obligation to make payments would begin under the Chicago agreement. Cheese Depot's interpretation of the Chicago agreement is plausible. Thus, Cheese Depot has stated a colorable breach of contract claim.

In reaching this conclusion, the court has compared the terms of the Chicago and Romanian agreements. The Romanian agreement is properly before the court in connection with a Rule 12(b)(6) motion to dismiss as the Chicago agreement expressly refers to it.[3] *See Geinosky*, 675 F.3d at 746 n.1. The Romanian agreement appears to address the transfer of shares to Boboris upon Livadits' retirement. The interplay of the two agreements would be clearer based on a more fully developed record. Nevertheless, the Romanian agreement's focus on the transfer of shares and the dearth of language specifying the terms of sale for the building further supports Cheese Depot's position.

Sirob's final argument is that even if the court finds that Cheese Depot can rely on an alleged breach of the Chicago agreement to support its breach of contract claim, the Chicago agreement is not binding because it does not adequately describe the real property at issue. For the purposes of Sirob's motion to dismiss, this argument is waived as Sirob raised it for the first time in reply. *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010). In any event, it would be unavailing. Sirob directs the court's attention to a 1903 Illinois Supreme Court case

---

[3] Sirob also filed an affidavit from Boboris in support of its motion to dismiss. (Dkt. 14-4.) In that affidavit, Boboris asserts that the Chicago agreement reflected the parties' intention to enter into (1) a future transaction about real property in Romania and (2) a current transaction about the buying and selling of cheese. The court cannot consider this type of extrinsic evidence when considering a motion to dismiss for failure to state a claim. *See Geinosky*, 675 F.3d at 746 n.1

holding that "where the description of the property in a contract for sale of real estate is uncertain, the contract will not be specifically enforced." *Fowler v. Fowler*, 204 Ill. 82, 87 (Ill. 1903). Cheese Depot seeks money damages for the alleged failure to pay pursuant to a schedule in a contract. It does not seek specific performance of a contract to purchase real property. *See Schilling v. Stahl*, 918 N.E.2d 1077, 1080-83 (Ill. App. 2009). Indeed, it appears that the property has already been transferred to Boboris.

For all of these reasons, Sirob's motion to dismiss for failure to state a claim is denied.

**B.    Rule 12(b)(1) Motion to Dismiss For Improper Venue**

When considering a Rule 12(b)(3) motion to dismiss for improper venue, the court may look at documents outside the pleadings. *ForteCEO Services, Inc. v. Terra Contracting, LLC*, No. 11 C 5179, 2012 WL 2597888, at *2 (N.D. Ill. July 3, 2012) (citing *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 809–10 (7th Cir. 2011)). Thus, the documents Sirob submitted in support of its motion to dismiss for proper venue – the Romanian agreement and Boboris' affidavit – are properly before the court. In his affidavit, Boboris asserts that the parties intended the Chicago agreement to govern a transaction about the sale of cheese, not the purchase of property in Romania. Boboris represents that performance under the Chicago agreement has been completed as Cheese Depot delivered the cheeses (and, presumably, the plastic containers specified in the agreement) and Sirob paid for them. Finally, Boboris states that Sirob does not do business in Illinois and that Sirob conducts its corporate business in New York.

1. **Legal Standard**

In a civil action, venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *Soucy v. Capital Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, at *5 (N.D. Ill. Jan. 29, 2015). Factual conflicts are resolved in the plaintiff's favor, and the court may draw reasonable inferences from those facts. *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008). If venue is improper, the court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

2. **The Propriety of Venue in Illinois**

The Chicago agreement states that it "is between" Boboris and Livaditis. (Dkt. 1 at 4.) It then identifies Boboris as Sirob's president and Livaditis as the director of the Cheese Depot. The signature lines bear the names of the companies and Boboris and Livaditis signed on behalf of their respective corporate entities. (*Id.*) In contrast, the Romanian agreement was between Boboris and Livaditis in their individual capacities. (Dkt. 14-3.)

In support of its argument about venue, Sirob again argues that the Romanian agreement is the operative contract between the parties and that the parties have fully performed under the Chicago agreement, which dealt exclusively with the purchase of cheese. According to Sirob, if Cheese Depot wishes to pursue a claim based on the sale of the building in Romania, Cheese Depot must sue Boboris individually based on the Romanian agreement. Sirob thus concludes that Cheese Depot cannot secure venue in this district by suing Sirob pursuant to the Chicago agreement.

As detailed above, the court denied Sirob's motion to dismiss based on the argument that the Romanian agreement is the sole contract at issue in this case. The Chicago agreement states that it was "made in Chicago." (Dkt. 1 at 4.) Cheese Depot asserts it negotiated the terms of the Chicago agreement with Sirob in Chicago, that the parties executed the contract in Chicago, and that Sirob sent payments to Chicago (before it stopped making payments). While Cheese Depot did not submit any evidence supporting its allegations, Boboris' affidavit does not contradict these allegations. Moreover, Sirob's arguments about venue are all based on its position (contrary to the allegations in the complaint) that Cheese Depot's breach of contract claim is based on the Romanian agreement, not the Chicago agreement.

As a general rule, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo*, S.A., 338 F.3d 773, 783 (7th Cir. 2003). The same standard applies to motions to dismiss based on improper venue. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). Cheese Depot argues that it can rest on the allegations in its

complaint about venue since Boboris' affidavit does not address where venue lies for a claim against Sirob based on the Chicago agreement.  The court agrees that Boboris' affidavit does not contest venue over Sirob in this district based on a breach of the Chicago agreement, since Sirob's position is that the only contract at issue is the Romanian agreement.  Thus, Cheese Depot was not required to submit affidavits or other evidence opposing Boboris' affidavit.

As noted above, § 1391(b)(2) permits a plaintiff to file suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Venue in a breach of contract action turns on "where the conduct underlying the breach occurred and where performance under the contract was to take place," and whether there was "[f]ailure to make payment in a district pursuant to a contract."  *Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*, No. 13 C 04750, 2013 WL 5904527, at *3 (N.D. Ill. Nov. 4, 2013) (citations omitted).  Courts also consider where the contract was negotiated or executed.  *See*, *e.g.*, *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 917 (N.D. Ill. 2010).  Sirob's convoluted argument that Cheese Depot should have sued Boboris under the Romanian agreement does not engage with any of these factors.

Boboris appears to have signed the Chicago agreement on behalf of Sirob because while the Chicago agreement states that it "is between" Boboris and Livaditis, Boboris signed in his capacity as Sirob's president.  (Dkt. 1 at 4.)  Under Illinois law, "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document," the corporation is bound and the officer is not personally liable.  *Wottowa Ins. Agency, Inc. v. Bock*, 472 N.E.2d 411, 413 (Ill. 1984).  Cheese Depot contends that the parties negotiated, finalized, and executed the Chicago agreement in Chicago.  This is

sufficient to support venue in this district. Sirob's motion to dismiss for improper venue is, therefore, denied.

## IV. CONCLUSION

For the above reasons, Sirob Imports' motion to dismiss for improper venue and failure to state a claim [13] is denied. Sirob shall answer by April 6, 2015. This case is set for status on April 10, 2015 at 9:30 a.m.


Date:  March 13, 2015                             /s/
                                         Joan B. Gottschall
                                         United States District Judge