IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHEESE DEPOT, INC., an Illinois Corporation, | ) ) ) |
| Plaintiff, | ) No. 14-cv-1727 ) |
| v. | ) Jeffrey T. Gilbert ) Magistrate Judge |
| SIROB IMPORTS, INC., a New York Corporation, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cheese Depot, Inc. ("Plaintiff"), has filed this breach of contract action against Defendant, Sirob Imports, Inc. ("Defendant"). This matter is now before the Court on Defendant's Motion for Summary Judgment [ECF No. 109]. For the reasons stated below, Defendant's Motion [ECF No. 109] is denied.

### I. LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether there is a genuine issue of fact, a district court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). And the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, a court does not "evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter" but rather "determine[s] whether there exists a genuine issue of triable fact." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008) (citation omitted). The court cannot make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Anderson*, 477 U.S. at 255; *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Rather, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court, therefore, must look at the evidence as a jury might, construing the record in the light most favorable to the nonmoving party and avoiding a temptation to decide which party's version of the facts is more likely true. *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999).

2

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts with "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts . . . ." Local Rule 56.l(a). Then, "the party opposing the motion for summary judgment is required to file and serve 'a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (quoting Local Rule 56.l(b)(3)(B)). Local Rule 56.1(b)(3)(C) also "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005) (quoting Local Rule 56.1).

The failure of a nonmoving party to abide by the requirements of Local Rule 56.1 carries significant consequences. "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Id.* Specifically, the responding party's failure "to cite to any admissible evidence to support facts presented in response" renders "the facts presented by the moving party as undisputed." *Id.* The purpose of the Local Rule 56.1 statement of facts is to identify the relevant evidence supporting the material facts that the moving party contends are undisputed, not to make factual or legal argument. *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). A party's obligation to support its facts with evidence is mandatory, and the Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1. *See Yancick v. Hanna Steel Corp.*, 653

3

F.3d 532, 537 (7th Cir. 2011); *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000).

## II. FACTUAL BACKGROUND

Plaintiff alleges that Defendant breached an agreement dated July 24, 2007, for the sale of certain property and equipment located in Romania ("the Chicago Agreement"). The Chicago Agreement, which is attached to and incorporated in Plaintiff's Second Amended Complaint, reads in its entirety:

### AGREEMENT

This agreement, made in Chicago, Illinois, July 24, 2007 is between Nick Boboris and John Livaditis. In this agreement, Nick Boboris, President, DBA Sirob Imports, 21 Gear Avenue, Lindenhurst, NY 11757 is referred to as NB. John Livaditis, Director, DBA Lacto Baneasa, Cheese Factory, 16 E. Old Willow Road, Prospect Heights, IL 60070, who has the power to enter into contracts on behalf of Cheese Factory, referred to as JL.

JL agrees to sell NB 75% of the Lacto Baneasa building and equipment for $810,000.00 with a $10,000.00 down payment on signing of the contract. The balance is to be paid within 8 years with 7% interest. Interest only payments will start on January 1, 2008. The principal balance will be reduced by $30,000.00 annually by December 31st each year with the balance due on September 1, 2015 or sooner.

**INVENTORY:**
NB will buy the inventory of the 2007 season; estimated amount is 85,000 kg of Feta and 5,000 kg of Hard Cheese. After he checks the quality at the factory, he will make a commitment to buy it or not buy it. Also all the new plastic containers ordered for the season 2008 will pay cost. The price of the Feta will be $3.85 per kg, plus shipping costs. The price of the Hard Cheese will be $4.85 per kg, plus shipping costs. The terms for the inventory will be 120 days, paying weekly, as he collects money for sales.

| SIROB IMPORTS, INC. | CHEESE FACTORY |
|---|---|
| Accepted by: | Accepted by: |
| __/signed_____ | __/signed_____ |
| Nick Boboris, President | John Livaditis |

Plaintiff's Second Amended Complaint, [ECF No. 45], Exhibit A.

Plaintiff has alleged that Cheese Depot, Inc. was mistakenly identified in the Chicago Agreement as "Cheese Factory" due to an inadvertent drafting error, and maintains that Cheese Depot, Inc. was and continues to be the intended party under the contract. Plaintiff's Second Amended Complaint, [ECF No. 45], ¶¶ 8, 9; Plaintiff's Response to Defendant's Statement of Undisputed Facts and Statement of Additional Facts Pursuant to Local Rule 56.1 ("Plaintiff's SoF"), [ECF No. 118], ¶¶ 38, 42. Plaintiff's breach of contract action is specifically based upon the following paragraph of the Chicago Agreement:

> JL agrees to sell NB 75% of the Lacto Baneasa building and equipment for $810,000.00 with a $10,000.00 down payment on signing of the contract. The balance is to be paid within 8 years with 7% interest. Interest only payments will start on January 1, 2008. The principal balance will be reduced by $30,000.00 annually by December 31st each year with the balance due on September 1, 2015 or sooner.

Plaintiff's Second Amended Complaint, [ECF No. 45], Exhibit A.

It is undisputed that Livaditis and Boboris are not parties to the instant action. Defendant's Local Rule 56.1(a) Statement of Undisputed Material Facts ("Defendant's SoF"), [ECF No. 111], ¶¶ 13, 20; Plaintiff's SoF, [ECF No. 118], ¶¶ 13, 20. It is further undisputed that Boboris signed the Chicago Agreement in his capacity as President of Sirob Imports. Plaintiff's SoF, [ECF No. 118], ¶ 43; Defendant's Response to Plaintiff's Rule 56.1(a) Statement of Additional Facts ("Defendant's Response to Plaintiff's SoF"), [ECF No. 120], ¶ 43. The parties do not seem to dispute that Livaditis signed the Chicago Agreement in his capacity as a corporate officer; rather, the crux of the dispute is whether Livaditis signed in his capacity as President of

5

Cheese Factory, or as President of Cheese Depot.[1] Livaditis is the sole shareholder and only officer of Cheese Depot. Plaintiff's SoF, [ECF No. 118], ¶ 41; Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 41. Cheese Factory is not a company, and Livaditis has never operated a business in Illinois or the United States known as Cheese Factory. Defendant's SoF, [ECF No. 111], ¶¶ 36, 37; Plaintiff's SoF, [ECF No. 118], ¶¶ 36, 37.[2]

Prior to September 12, 2007, Livaditis was the owner of a 75% interest in the Romanian Company, S.C. Lacto Baneasa ("Lacto Baneasa"). Defendant's SoF, [ECF No. 111], ¶ 24; Plaintiff's SoF, [ECF No. 118], ¶ 24. Livaditis owned the shares of Lacto Baneasa personally. Defendant's SoF, [ECF No. 111], ¶ 33; Plaintiff's SoF, [ECF No. 118], ¶ 33. Cheese Depot has never had an interest in Lacto Baneasa. Defendant's SoF, [ECF No. 111], ¶¶ 21, 25; Plaintiff's SoF, [ECF No. 118], ¶¶ 21, 25. On September 12, 2007, Livaditis and Boboris, in their individual capacities, executed a contract for the assignment of Livaditis' shares in Lacto Baneasa to Boboris ("the Romanian Shares Agreement"). Defendant's SoF, [ECF No. 111], ¶ 26; Plaintiff's SoF, [ECF No. 118], ¶ 26.

The facts pertaining to payments made pursuant to the Chicago Agreement are murky, at best. For example, Plaintiff states that all payments made by Defendant for the cheese products delivered pursuant to the Chicago Agreement were made directly to Cheese Depot, citing Defendant's answers to interrogatories in support. Plaintiff's SoF, [ECF No. 118], ¶ 46. But the evidence cited does not completely support this assertion. Several checks were issued to "Cheese Factory." Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 46; Defendant's

---

[1] In its Local Rule 56.1 submission, Defendant first states that the Agreement was signed by Livaditis on behalf of Cheese Depot. Defendant's SoF, [ECF No. 111], ¶ 19. Later, Defendant states that the agreement is signed between Cheese Factory and Sirob. Defendant's SoF, [ECF No. 111], ¶ 38.

[2] Defendant says Cheese Factory is not a "company" in its Statement of Facts, and Plaintiff does not dispute this "fact." Defendant's SoF, [ECF No. 111], ¶ 37; Plaintiff's SoF, [ECF No. 118], ¶ 37. The Court takes this to mean that the parties agree Cheese Factory is not a legal entity.

Answers to Plaintiff's First Set of Interrogatories, [ECF No. 118-3], p. 5 at ¶ 3; Plaintiff's Answers to Defendant's Request to Admit, [ECF No. 111-10], ¶¶ 39, 40.[3] Perhaps Plaintiff meant to state that all payments made by Defendant for the delivered cheese products pursuant to the Chicago Agreement were deposited directly into Cheese Depot's operating account, but the record before the Court is unclear in this regard. In any event, the parties agree that all money owed for the purchase of cheese referred to in the Chicago Agreement has been paid in full by Defendant. Defendant's SoF, [ECF No. 111], ¶ 22; Plaintiff's SOF, [ECF No. 118], ¶¶ 22, 47.

Plaintiff also alleges Defendant made the following payments to Cheese Depot under the Chicago Agreement:

```
2007   $10,000 down payment                      Paid in Full
2008   Interest $56,000 plus $30,000 principal   Paid in Full
2009   Interest $55,992 plus $30,000 principal   Overpayment of $4,196.96
2010   Interest $51,804 plus $30,000 principal   Unpaid: $23,808.00
2011   Interest $49,704 plus $30,000 principal   Unpaid: $79,704.00
2012   Interest $47,604 plus $30,000 principal   Unpaid: $52,604.00
2013   Interest $45,404 plus $30,000 principal   Unpaid: $75,404.00
```

Plaintiff's SoF, [ECF No. 118], ¶ 50.[4] According to Livaditis, these payments were for the transfer of shares in Lacto Baneasa, and "the above payment history includes each and every payment made by Sirob, Boboris or Lacto Baneasa under the terms of the Chicago Agreement." Livaditis Affidavit, [ECF No. 118-1], ¶¶ 26, 28. The payments were made by wire transfer from

---

[3] Plaintiff later states in Paragraph 51 of its Statement of Additional Facts that all of Sirob's payments under the Agreement were made by Sirob to Cheese Depot, and Defendant does not dispute this statement of fact. Plaintiff's SoF, [ECF No. 118], ¶ 51; Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 51. Notably, however, the affidavit cited by Plaintiff in support of this statement of fact states only that "all payments were made by wire transfer from [the] *Lacto Baneasa* operating account." Livaditis Affidavit, [ECF No. 118-1], ¶ 27 (emphasis added).

[4] Defendant disputes making these payments, but cites only to its blanket denial of all of the allegations in Plaintiff's Second Amended Complaint in support. Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 50. The only evidence cited in support of Plaintiff's assertion that Defendant made these payments is the Affidavit of Livaditis. Plaintiff's SoF, [ECF No. 118], ¶ 50. Plaintiff offers no objective evidence in support of this statement of fact. At this juncture, therefore, it appears that the parties dispute these facts relating to payments made to Cheese Depot and the purpose of those payments.

the Lacto Baneasa operating account to the Cheese Depot operating account. Livaditis Affidavit, [ECF No. 118-1], ¶¶ 27, 29. Boboris admits that Lacto Baneasa began making payments under the Romanian Shares Agreement that was signed in September of 2007. Boboris Dep., [ECF No. 111-4], at 124–25.[5] Defendant, however, denies making any payments under the Chicago Agreement for the Lacto Baneasa shares, building, or equipment, and maintains that any payments made by Sirob to Cheese Factory or Cheese Depot were for cheese only. Defendant's Response to Plaintiff's SoF, [ECF No. 120)], ¶¶ 50, 56.

In January 2008, Livaditis filed suit against Boboris in Romania, alleging the same facts as are alleged in the instant action based on the same contract as the instant action. Defendant's SoF, [ECF No. 111], ¶ 14; Plaintiff's SoF, [ECF No. 118], ¶ 14. Although Plaintiff does not dispute this particular statement of fact, it later characterizes this lawsuit as a "rescission lawsuit," a fact which Defendant disputes. Plaintiff's SoF, [ECF No. 118], ¶ 54; Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 54. The lawsuit was dismissed in June 2008 after the parties reached a settlement. Defendant's SoF, [ECF No. 111], ¶ 15, 16; Plaintiff's SoF, [ECF No. 118], ¶¶ 16, 55.

Livaditis filed a second lawsuit against Boboris in Romania in March 2015. Defendant's SoF, [ECF No. 111], ¶¶ 17, 18. Plaintiff disputes that the March 2015 Romanian lawsuit alleges the same cause of action as the instant case, but does not offer an alternative to Defendant's assertion that it was the same cause of action as the instant case. Plaintiff's SoF, [ECF No. 118], at ¶ 17. The 2015 Romanian lawsuit was dismissed in April 2017 based upon Livaditis's failure

---

[5] Boboris testified that Lacto Baneasa made payments under the Romanian Shares Agreement although it is undisputed that Boboris and Livaditis entered into that Agreement in their individual capacities. Boboris Dep., [ECF No. 111-4], at 122–25; Defendant's SoF, [ECF No. 111], at ¶ 26; Plaintiff's SoF, [ECF No. 118], ¶ 26.

8

to produce an August 17, 2007 agreement that was referenced in his complaint. [ECF No. 111-8], at 8.

### III. DISCUSSION

Defendant argues that it is entitled to summary judgment because (1) Cheese Depot is not a party to the Chicago Agreement; (2) even if Cheese Depot is the real party in interest, it never owned or had an interest in Lacto Baneasa or the building and equipment referenced in the Chicago Agreement; and (3) Cheese Depot's claims are barred by the doctrine of *res judicata*. Each of these arguments will be addressed in turn. None of them justify granting summary judgment in Defendant's favor on the record presented.

#### A. A Question of Fact Exists as to Whether Cheese Depot is the Real Party in Interest

Defendant first contends that the Chicago Agreement was between Sirob and Cheese Factory, not Cheese Depot. Defendant's SoF, [ECF No. 111], ¶ 38. Plaintiff maintains that Cheese Depot was mistakenly identified in the Chicago Agreement as "Cheese Factory" due to an inadvertent drafting error, and that Cheese Depot was and continues to be the intended party under the contract. Plaintiff's Second Amended Complaint, [ECF No. 45], ¶¶ 8, 9; Plaintiff's SoF, [ECF No. 118], ¶ 38. Construing the evidence before the Court in the light most favorable to Plaintiff, as the Court is required to do in the context of the present motion, the Court cannot find on this record that Defendant has established as a matter of law that Plaintiff is not the real party in interest.

As an initial matter, the parties have not cited any Illinois case law directly addressing whether a mistake in identifying the name of a contracting party renders the underlying contract unenforceable. However, "there is a general concurrence of modern authority to the effect that a misnomer or variance from the precise name of the corporation in a grant or obligation by or to it

is not material if the identity of the corporation is unmistaken either from the face of the instrument or from the averments and proof." *Malleable Iron Range Co. v. Pusey*, 148 Ill. App. 344, 347, 1909 WL 1936, at *2 (1909), *aff'd* 244 Ill. 184, 91 N.E. 51 (1910) (quoting 1 Thomson on Corporations, Sec. 294); *see also Peake v. Wabash R. R.*, 18 Ill. 88, 90, 1856 WL 5414, at *2 (1856) ("Instruments in writing are not void because made to a party by the wrong name, and any misnomer, or apparent variance, may be reconciled and explained, in pleading, by averment, and avoided in effect by proof."); *Pilsen Brewing Co. v. Wallace*, 214 Ill. App. 540, 545, 1919 WL 1659, at *3 (1919) ("It has long been settled that it is not necessary in order that a corporation be bound by its contracts that they should be made in its exact corporate name.").

Furthermore, courts in other jurisdictions have held that "misidentification of a contracting party's legal name in a contract does not, in and of itself, prohibit any party to that contract from enforcing it as long as the entity's true identity is reasonably clear or can be ascertained by sufficient evidence and the other parties to the contract were not, or were not likely to have been, misled by the misidentification." *HM of Topeka, LLC v. Indian Country Mini Mart*, 236 P.3d 535, 540 (Kan. Ct. App. 2010); *see also Sunstone at Colorado Springs Homeowners Ass'n, Inc. v. White*, 56 P.3d 127, 130 (Colo. App. 2002) (concluding that "the variation or misnomer in plaintiff's name as set forth in the [legal document was] immaterial" in part because "there [was] no evidence that the misnomer . . . frustrated the identification of plaintiff or caused confusion to defendants"); *In re D & B Construction of Westchester, Inc.*, 2008 WL 4890945, at *8 (N.Y. Sup. Ct. Nov. 3, 2008) ("If the entity of the corporation can be ascertained by the instrument itself, the misnomer is held unimportant; but, if not, evidence may be introduced . . . to establish what particular corporate entity was intended.").

Here, Plaintiff has adduced sufficient evidence to create a question of fact as to whether Cheese Depot, not Cheese Factory, was the intended party to the Chicago Agreement. For example, it is undisputed that Cheese Factory is not an existing company, and Livaditis has never operated a business in Illinois or the United States known as Cheese Factory. Plaintiff's SoF, [ECF No. 118], ¶¶ 36, 37; Defendant's SoF, [ECF No. 111], ¶¶ 36, 37. Livaditis is the sole shareholder and only officer of Cheese Depot. Plaintiff's SoF, [ECF No. 118], ¶ 41; Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 41. The Chicago Agreement contains the correct business address of Cheese Depot. Plaintiff's SoF, [ECF No. 118], ¶ 40; Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 40. All cheese deliveries pursuant to the Agreement were made by Cheese Depot. Plaintiff's SoF, [ECF No. 118], ¶ 44; Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 44. In addition to these undisputed facts, Plaintiff also maintains that Cheese Depot owned the cheese referenced in the Agreement, not Lacto Baneasa. Livaditis Dep., [ECF No. 111-2], at 119. Plaintiff further contends that the Chicago Agreement was signed at Cheese Depot's principal place of business and only office, and that Livaditis signed the Chicago Agreement in his capacity as President of Cheese Depot, facts which Defendant disputes. Livaditis Affidavit, [ECF No. 118-1], ¶¶ 6, 7; Plaintiff's SoF, [ECF No. 118], ¶ 42; Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 42.

On the other hand, there is evidence that suggests Defendant made payments to both Cheese Factory *and* Cheese Depot. Defendant's Response to Plaintiff's SoF, [ECF No. 120], ¶ 46. Letterhead and invoices bearing the name "Cheese Factory" exist. Livaditis Dep., [ECF No. 111-2], at 40; Plaintiff's Answers to Defendant's Request to Admit, [ECF No. 111-10], ¶¶ 39, 40, 46. Boboris testified that it was his understanding that Cheese Factory and Cheese Depot were two separate companies owned by Livaditis. Boborois Dep., [ECF No. 111-4], at 80.

11

Livaditis himself testified that Cheese Depot used "Cheese Factory" for local deliveries. Livaditis Dep., [ECF No. 111-2], at 100. And Defendant argues that Livaditis has more than one business registered at the same address as Cheese Depot's principal place of business. Defendant's Reply, [ECF No. 119], at 5.

Clearly, questions of fact exist as to the true intent of the parties in signing the Chicago Agreement. It may be that Defendant is right and will ultimately be successful at the trial of this matter. However, "resolution of a misnomer question involves a fact-sensitive inquiry based on the particular circumstances." *Morris v. Off-Piste Capital, LLC*, 2018 WL 312800 (Utah Ct. App. Jan. 5, 2018). Here, the decision cannot be made without weighing conflicting evidence, judging credibility, and adjudicating disputed material facts. In determining whether summary judgment is warranted, courts do not make "credibility determinations, weigh evidence, or decide what inferences to draw from the facts." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (internal quotation and citation omitted). Construing the evidence before the Court in the light most favorable to Plaintiff, as the Court is required to do in the context of the present motion, the Court cannot find on this record that Defendant has established as a matter of law that Plaintiff is not the real party in interest. A genuine issue of material fact exists as to the capacity in which Livaditis signed the agreement, precluding summary judgment.

**B.     Cheese Depot's Lack of an Ownership Interest in Lacto Baneasa or the Property to be Sold at the Time the Agreement was Entered Into is Not Dispositive**

The essence of Defendant's second argument is that, even if Plaintiff is the correct party, Plaintiff cannot seek to enforce the Chicago Agreement because it did not own the property that purportedly was to be sold pursuant to the Agreement at the time the Agreement was entered into. Plaintiff admits that Cheese Depot never had any interest in Lacto Baneasa. Plaintiff's SoF, [ECF No. 118], ¶¶ 21, 25. However, under the circumstances, this fact is not dispositive.

First, Defendant has brought forth no case law to support the proposition that Plaintiff (assuming it can show that it is the intended party to the Chicago Agreement) does not have standing to enforce the Chicago Agreement simply because, at the time the contract was entered into, Cheese Depot did not own the property or equipment to be sold. Second, there is no representation in the Chicago Agreement that either Cheese Depot or Cheese Factory had an ownership interest in Lacto Baneasa or owned the property or equipment being sold, and ownership is not an explicit condition of the contract. As written, the Chicago Agreement leaves open the possibility that Cheese Depot (or Cheese Factory) could later own or acquire the property. "It is perfectly legal for a party to enter into an agreement, as seller, to sell property to which he does not presently have title." *Lampinen v. Hicks*, 73 Ill. App. 3d 376, 378–79, 391 N.E.2d 1105, 1107 (1979); *see also White v. Bates*, 234 Ill. 276, 278, 84 N.E. 906, 907 (1908) ("It is not essential to the validity of a contract for the sale of real estate that the grantor should have the title at the time the contract is made. It is sufficient if, when the specified time arrives, he is able to tender, and does tender, a deed as required by his contract.").

There is no language in the Chicago Agreement, for example, that would have prevented Livaditis from transferring his ownership interest in Lacto Baneasa and the building to Cheese Depot. Thus, at the time the Chicago Agreement was entered into, Cheese Depot had the ability to obtain the property and shares to be sold from Livaditis if that was necessary to consummate the transaction contemplated by the Chicago Agreement. The Court does not mean to imply this was the parties' intent; only that the contract is susceptible to interpretation that would not render it unenforceable. There also are a myriad of other ways in which the Chicago Agreement could be performed. The Court also notes that the Chicago Agreement does not contain an integration clause. The Court, therefore, cannot conclude based on the undisputed facts that Plaintiff's lack

13

of ownership interest in Lacto Baneasa or the building and property being sold at the time the agreement was entered into invalidates the Chicago Agreement as a matter of law.

## C. Plaintiff's Claims Are Not Barred by the Doctrine of Res Judicata

Finally, Defendant argues that the two dismissal orders from the Romanian courts constitute final adjudications that bar Plaintiff's current complaint. Defendant's Motion, [ECF No. 110], at 10. "The doctrine of res judicata provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Arlin-Golf, LLC. v. Vill. Of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011). "Res judicata applies when (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Id.* (internal quotations and citations omitted).

The first order Defendant cites was entered in June 2008, dismissing a Romanian lawsuit brought by Livaditis against Boboris after the parties reached a settlement. [ECF No. 111-7], at 4–6.[6] Plaintiff argues that res judicata does not apply because the 2008 case was settled between the parties and therefore the dismissal order does not qualify as a "final judgment on the merits." Plaintiff's Response, [ECF No. 117], at 11. Further, Plaintiff contends that the current litigation was triggered by the event of default that occurred in 2010, two years after the entry of the dismissal order. Plaintiff's Response, [ECF No. 117], at 12. The Court agrees with Plaintiff.

---

[6] Although Plaintiff's Response to Defendant's Motion for Summary Judgment seems to argue otherwise, in its response to Defendant's Local Rule 56.1 submission, Plaintiff does not dispute that the 2008 Romanian lawsuit alleged "the same allegations of the instant actions based on the same contract as the instant action." Defendant's SoF, [ECF No. 111], at ¶ 14; Plaintiff's SoF, [ECF No. 118], at ¶14. However, Plaintiff later characterizes the 2008 litigation as a "rescission" lawsuit in which Livaditis personally sued Boboris "to rescind *the sale of shares agreement*." Plaintiff's SoF, [ECF No. 118], ¶ 54; Livaditis Affidavit, [ECF No. 118-1], ¶ 35.

14

Illinois courts have held that a dismissal with prejudice pursuant to a settlement agreement does not operate as a final judgment on the merits. *See Currie v. Wisconsin Cent., Ltd.*, 2011 IL App. (1st) 103095, ¶ 29 (noting a split between courts in Illinois on the question of whether a settlement agreement operates as a final judgment on the merits, but agreeing with cases that do not view a settlement agreement as a final judgment on the merits); *Goodman v. Hanson*, 408 Ill. App. 3d 285, 300 (1st Dist. 2011) (a dismissal with prejudice pursuant to a settlement agreement was not a final judgment on the merits because " 'an agreed order is not a judicial determination of the parties' rights, but rather is a recordation of the agreement between the parties' " (quoting *Kandalepas v. Economou*, 269 Ill. App. 3d 245, 525 (1st Dist. 1994)).

Here, the 2008 lawsuit was dismissed pursuant to a settlement agreement, and Plaintiff is not alleging a breach of the Chicago Agreement occurred before that lawsuit was dismissed in 2008. Plaintiff clearly alleges that Defendant's obligations under the Chicago Agreement were fulfilled through 2009. Plaintiff's Second Amended Complaint, [ECF No. 45], ¶ 12. It was not until 2010 that Sirob allegedly failed to meet its contractual obligations. *Id.* Although the 2008 Romanian lawsuit and the instant case involve alleged breaches of the same Chicago Agreement, the operative facts are not the same. The 2008 dismissal order does not bar Plaintiff's current complaint.

Defendant also asserts that the April 2017 order dismissing Livaditis's March 2015 Romanian lawsuit against Boboris bars Plaintiff's current claims. Defendant's Motion, [ECF No. 110], at 11–12. It does not. The parties in the two lawsuits are different. The lawsuit in Romania was over the Romanian Shares Agreement. This lawsuit is over the Chicago Agreement. There is no indication that the dismissal of the Romanian lawsuit operates as an adjudication on the merits of that lawsuit or this one. And Defendant cites no case law to

support its argument. Therefore, the April 2017 in Romanian order does not affect Plaintiff's current lawsuit against Defendant, and Defendant is not entitled to judgment as a matter of law on this basis.

### IV. CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Defendant Sirob Imports, Inc.'s Motion for Summary Judgment [ECF No. 109] is denied. This case is set for a status hearing on May 10, 2018, at 10:00 a.m. to set a trial date and a date for the filing of a pretrial order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 16, 2018