IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHEESE DEPOT, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>SIROB IMPORTS, INC.,<br><br>        Defendant. | Case No. 14 C 1727<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Defendant's Motion for Reconsideration of Denial of Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 [126] is denied.

## BACKGROUND

This case involves a dispute over the purchase of property located in Romania. Plaintiff Cheese Depot, Inc. claims that Defendant Sirob Imports, Inc. breached a contract to purchase the Romanian property, when Sirob failed to make required payments beginning in 2010. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings including the entry of a final judgment. (Doc. 68). On April 16, 2018, Magistrate Judge Gilbert denied Sirob's motion for summary judgment. (Doc. 121). Sirob moved for reconsideration of the denial of summary judgment with Judge Gilbert on August 7, 2018. (Doc. 126). After the motion for reconsideration was fully briefed, the case was reassigned to the undersigned magistrate judge. (Doc. 140). For the reasons that follow, Sirob's motion for reconsideration is denied.

The factual background relevant to the parties' dispute is laid out in the April 16, 2018 Memorandum Opinion and Order. (Doc. 121). The Court presumes familiarity with the prior opinion.

## DISCUSSION

Sirob requests that the Court reconsider the denial of its summary judgment motion pursuant to Federal Rule of Civil Procedure 54(b). The opinion denying summary judgment is interlocutory. *Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir. 2012) (noting that "[i]t is basic procedural law that a denial of summary judgment is an interlocutory ruling."). Motions to reconsider interlocutory orders are governed by Rule 54(b), which provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment, thereby bestowing sweeping authority upon the district court to reconsider a [summary judgment motion]"). Nevertheless, the "standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b)." *Morningware, Inc. v. Hearthware Home Products, Inc.*, 2011 WL 1376920, at *2 (N.D. Ill. April 12, 2011).

Motions to reconsider serve a narrow function: "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264. 1269 (7th Cir. 1996). A motion for reconsideration is proper where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Because litigants have the right to expect consistency even if judges change, the Seventh Circuit has also advised that a later judge should "abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was

incorrect." *Galvan v. Norberg*, 678 F.3d at 587 (*quoting Fujisawa Pharm. Co. v. Kappor*, 115 F.3d 1332, 1339 (7th Cir. 1997)).

In his April 16, 2018 Memorandum Opinion and Order, Judge Gilbert found that: (1) a genuine issue of material fact exists as to whether Cheese Depot, not Cheese Factory, was the intended party to the Chicago Agreement; (2) Cheese Depot's lack of ownership interest in Lacto Baneasa or the building and property being sold at the time of the agreement did not invalidate the Chicago Agreement as a matter of law; and (3) Cheese Depot's claim is not barred by *res judicata*. Sirob asks the Court to reconsider Judge Gilbert's second and third rulings and enter summary judgment in its favor.

As to Judge Gilbert's first ruling, Cheese Depot asserted at summary judgment that it was mistakenly identified as Cheese Factory in the Chicago Agreement, and Livaditis signed the Chicago Agreement as President of Cheese Depot. (Doc. 120, at ¶ 42). Sirob contended that Livaditis signed the Chicago Agreement on behalf of Cheese Factory, not Cheese Depot. *Id.* In its motion for reconsideration, Sirob does not challenge Judge Gilbert's finding that a genuine issue of material fact exists as to whether Cheese Depot, not Cheese Factory, was the intended party to the Chicago Agreement. In fact, Sirob argues that it is immaterial and irrelevant whether Cheese Depot, not Cheese Factory, was the intended party to the Chicago Agreement because neither entity owned any shares in Lacto Baneasa. (Doc. 126, at 8; doc. 130, at 2-3). Accordingly, for purposes of this Order and the following analysis of Sirob's challenges to the summary judgment ruling, the Court views the facts in the light most favorable to Cheese Depot and assumes that Cheese Depot and not Cheese Factory was the intended party to the Chicago Agreement.

3

Sirob advances two main arguments in support of its motion for reconsideration: (1) Cheese Depot's lack of an ownership interest in Lacto Baneasa is dispositive; and (2) Cheese Depot's claim is barred by *res judicata*. (Doc. 126, at 9-12).[1] As to Sirob's first argument, Judge Gilbert found at summary judgment that Cheese Depot's lack of ownership in the property subject to the Chicago Agreement at the time the agreement was entered into was not dispositive. (Doc. 121, at 12-14). Judge Gilbert cited *Lampinen v. Hicks*, 391 N.E.2d 1105 (Ill. App. 1979) and *White v. Bates*, 84 N.E. 906 (1908) for the proposition that "[i]t is perfectly legal for a party to enter into an agreement, as seller, to sell property to which he does not presently have title." (Doc. 121, at 13). Judge Gilbert reasoned that in this case, the "Chicago Agreement leaves open the possibility that Cheese Depot (not Cheese Factory) could later own or acquire the property." *Id.* Sirob argues that Judge Gilbert's reliance on *Lampinen* and *White* was misplaced because Cheese Depot never acquired an interest in the Romania property known as Lacto Baneasa. (Doc. 118, at ¶ 21). In its motion for reconsideration, Sirob also states, "Both *Lampinen* and *White*, along with all of their related progeny, deal with the limited specific situation where the beneficiary of a land trust sells title to that land. Prior to the Court's decision, no judicial body has extended that holding beyond this situation to cover real estate transactions or mortgages or sales of shares where a seller does not own title to the property at issue." (Doc. 126, at 10).

The Court agrees with Judge Gilbert that Cheese Depot's lack of an ownership interest in Lacto Baneasa or the building and property being sold at the time the Chicago Agreement was entered into does not invalidate the Chicago Agreement as a matter of law but for different reasons.

---

[1] Sirob also claims that Judge Gilbert failed to acknowledge that that the uncontested facts show that all amounts due Cheese Depot for cheese purchased by Sirob pursuant to the Chicago Agreement have been paid. (Doc. 126 at 6). The Court rejects this assertion as a basis for reconsideration because Judge Gilbert's decision expressly noted that "the parties agree that all money owed for the purchase of cheese referred to in the Chicago Agreement has been paid in full by Defendant." (Doc. 121 at 7).

Cheese Depot relied at summary judgment, and relies now, on an agency relationship between Cheese Depot and John Livaditis to establish that its lack of ownership in the Romanian property is not dispositive. (Doc. 117, at 5-6; doc. 129, at 4-5). "Generally, an agent is defined as one who undertakes to manage some affairs of another by his authority, subject to his control and on his account." *Edens View Realty & Investment, Inc. v. Heritage Enterprises Inc.*, 408 N.E.2d 1069, 1076 (Ill. App. 1980); *see also* IPI 50.05 (stating "[a]n agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts business, manages some affair or does some service for the principal, with or without compensation. The agreement may be oral or written, express or implied."). By definition, "[a]n agent does not have title to the property of the principal but can subject his principal to liability if he is acting within the scope of his authority." *Just Pants v. Bank of Ravenswood*, 483 N.E.2d 331, 335 (Ill. App. 1985).

"The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Anderson v. Boy Scouts of Am., Inc.*, 589 N.E.2d 892, 894 (Ill. App. 1992). Control is the key element to an agency determination, regardless of whether or not the principal exercises that right to control. *Id*. An agent's authority may be either actual or apparent. *Patrick Engineering, Inc. v. City of Naperville*, 976 N.E.2d 318, 329 (Ill. 2012) (internal quotation and citation omitted). Actual authority may be either express or implied. *Id*. "Express authority is actual authority granted explicitly by the principal to the agent; implied authority is actual authority proved circumstantially by evidence of the agent's position." *Id.* "Apparent authority arises when a principal, through words or conduct, creates a reasonable impression that the agent has authority to perform a certain act." *Granite Properties Ltd. Partnership v. Granite*

*Inv. Co.*, 581 N.E.2d 90, 92 (Ill. App. 1991). "The existence of an agency relationship may be demonstrated by circumstantial evidence, including the situation of the parties, their acts, and other relevant circumstances." *Parker v. Morrissey*, 2015 WL 1234056, at *4 (Ill. App. March 17, 2015). Finally,"[t]he existence and scope of an agency relationship are questions of fact to be determined by the trier of fact '[u]nless the parties['] relationship is so clear as to be undisputed.'" *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 474 (7th Cir. 1997) (*quoting Mateyka v. Schroeder*, 504 N.E.2d 1289, 1294 (Ill. App. 1987)).

To demonstrate an agency relationship, Cheese Depot must therefore establish either that it agreed to act on John Livaditis' behalf and be subject to his control or that John Livaditis ratified Cheese Depot's conduct as his own. *United States v. Adkinson*, 916 F.3d 605, 610 (7th Cir. 2019) (*citing* Restatement (Third) of Agency §§ 1.01, 4.01 (2006)); *see also NECA-IBEW Rockford Local Union 364 Health &Welfare Fund v. A&A Drug Co.,* 736 F.3d 1054, 1058 (7th Cir. 2013) (observing that "the federal common law of agency, Illinois agency law, and the Restatement of Agency are all in accord on general agency principals."). At summary judgment, Cheese Depot responded that the record evidence showed that it was acting as an agent of John Livaditis at the time it contracted with Sirob for the sale of the Romanian property. (Doc. 117 at 6). Specifically, the undisputed record showed that Livaditis is the sole shareholder and only officer of Cheese Depot; prior to September 12, 2007, Livaditis was also the owner of a 75% interest in the Romania Company, S.C., Lacto Baneasa; Livaditis owned the shares of Lacto Baneasa personally; and Cheese Depot has never had an interest in Lacto Baneasa. (Doc. 118, at ¶¶ 21, 24, 25, 32, 33, 34; doc. 120, at ¶ 41). There was also no dispute that Livaditis signed the Chicago Agreement in a corporate capacity (either on behalf of Cheese Depot or Cheese Factory) rather than in his individual capacity. (Doc. 120, at ¶ 42). Moreover, the record indisputably showed that on

6

September 12, 2007, Livaditis and Nick Boboris, in their individual capacities, executed a contract for the assignment of Livaditis' shares in Lacto Baneasa to Boboris. (Doc. 118 at ¶ 26). This evidence, when viewed in the light most favorable to Cheese Depot, would permit a reasonable jury to infer from the relationship between Cheese Depot and Livaditis that Cheese Depot had implied authority to act on Livaditis' behalf and subject to his control while contracting with Sirob. As to apparent agency, Livaditis' position as the owner and President of Cheese Dept and owner of a 75% interest in Romanian property could also lead a reasonable person to believe that Cheese Depot was Livaditis' agent and had the authority to enter into the Chicago Agreement binding him in his individual capacity to sell his interest in the Romanian property.

Alternatively, as Cheese Depot argued in opposition to summary judgment, the undisputed record establishes that Livaditis ratified Cheese Depot's act of entering into the Chicago Agreement. (Doc. 117 at 6-7). "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01; *SMK Assocs., LLC v. Sutherland Glob. Servs., Inc.*, 2016 WL 5476256, at *2 (N.D. Ill. Sept. 26, 2016) (noting ratification occurs when a principal affirms the act of another "even if the agent had acted without authority prior to the ratification."). A person ratifies an act by "manifesting assent that the act shall affect the person's legal relations" or by "conduct that justifies a reasonable assumption that the [principal] so consents." Restatement (Third) of Agency § 4.01. By selling his interest in Lacto Baneasa to Boboris on September 12, 2007, Livaditis affirmed the agency relationship and ratified the Chicago Agreement as his own. (Doc.118, at ¶¶ 26-28). Because the record would permit a reasonable trier of fact to conclude that Cheese Depot was acting as an agent for Livaditis at the time it contracted with Sirob for the

7

sale of the Romanian property, the Court rejects Sirob's challenge to Judge Gilbert's second summary judgment ruling.

Next, Sirob seeks reconsideration of Judge Gilbert's third summary judgment ruling that *res judicata* does not bar Cheese Depot's breach of contract claim. (Doc. 126, at 11-12). Under Illinois law, "[t]hree requirements must be satisfied in order for the doctrine of *res judicata* to apply. There must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies." *Village of Bartonville v. Lopez*, 77 N.E.3d 639, 650 (Ill. 2017). Sirob bears the burden of proving that *res judicata* applies. *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 8 (Ill. 2016); *see also Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446 (1959) ("[u]nder the Erie rule, presumptions (and their effects) and burden of proof are 'substantive'"); *Sunstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 813 (7th Cir. 1973) ("[i]t has long been settled that the burden of proof on a particular issue of a diversity case is a matter of substantive law, and, hence, a variable of local law which federal courts must observe under *Erie Ry. Co. v. Tompkins*."). Any "doubts are resolved against preclusion." *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 933 (7th Cir. 2003).

In his opinion, Judge Gilbert held that summary judgment on *res judicata* grounds was not warranted as to the April 7, 2017 Romanian order because: (1) the parties in the two lawsuits are different; (2) the "lawsuit in Romania was over the Romanian Shares Agreement [and] [t]his lawsuit is over the Chicago Agreement;" and (3) there was no showing that the dismissal of the Romanian lawsuit constitutes an adjudication on the merits. (Doc. 121, at 15). In its motion to reconsider, Sirob specifically objects to Judge Gilbert's first two conclusions. (Doc. 126, at 11-12). Sirob's motion does not address, let alone demonstrate, any error by Judge Gilbert in his

8

conclusion that the first *res judicata* requirement was not satisfied. *Id*. Because Sirob does not challenge Judge Gilbert's finding that the record failed to show that the dismissal of the second Romanian lawsuit qualifies as an adjudication on the merits, there is no basis to reconsider Judge Gilbert's denial of summary judgment on *res judicata* grounds.

In any case, the Court is not convinced that Judge Gilbert committed an error of law or fact in finding that the summary judgment record did not demonstrate that the April 7, 2017 Romanian dismissal order qualified as a final judgment on the merits for *res judicata* purposes. "The requirement of a final order or judgment is a 'critical' component in showing the applicability of *res judicata*." *Richter*, 53 N.E.2d at 8. "An order is final if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012). At summary judgment, Sirob maintained that the Romanian court dismissed Livaditis' action because he failed to produce an April 23, 2003 loan agreement between Livaditis and Lacto Baneasa and an August 17, 2007 agreement between Livaditis and Boboris which were referred to in his complaint. (Doc. 110, at 12-13). Sirob argued that the dismissal order became final when Livaditis failed to appeal the order. *Id*. at 13. Although there was no dispute between the parties concerning the language of the April 7, 2017 Romanian order or its translation, Sirob did not present any material supporting its interpretation that the April 7, 2017 dismissal order was a final judgment on the merits under Romanian law. (Doc. 118, at ¶ 18). When determining foreign law, courts "may consider any relevant material or source." Fed. R. Civ. P. 44.1. Rule 44.1 "permits foreign law to be proved by testimony or affidavits of experts and that is the route followed in most cases." *Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495 (7th Cir. 2009). "But it also permits judges to consult other sources of foreign law, such as articles, treatises, and judicial opinions," and "[t]hose are superior

sources." *Id*. At summary judgment, Sirob made no attempt to establish by the affidavit of an expert or with other material the legal significance of the April 7, 2017 Romanian order. Judge Gilbert correctly found that "[t]here is no indication that the dismissal of the Romanian lawsuit operates as an adjudication on the merits of that lawsuit." (Doc. 121, at 15). Consequently, the Court finds no basis to reconsider Judge Gilbert's *res judicata* ruling.

## CONCLUSION

For these reasons, Defendant's Motion for Reconsideration [126] is denied.

**SO ORDERED.**

Dated: April 5, 2019

                                            Sunil R. Harjani
                                            United States Magistrate Judge